**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-363C

(Filed: June 4, 2014)

```
*****************************
                              *
JULIO VILLARS,                *
                              *
              Plaintiff,      *
                              *
       v.                     *
                              *
THE UNITED STATES,            *
                              *
              Defendant.      *
                              *
*****************************
```

FILED

JUN 4 2014

U.S. COURT OF FEDERAL CLAIMS

## OPINION AND ORDER

**DAMICH**, Judge.

In this action, Plaintiff, Julio Villars, acting *pro se,* alleges that the United States ("Defendant")[1] breached an implied-in-fact contract with Plaintiff, who, pursuant to the alleged contract, provided services as a confidential human source ("CHS") in exchange for an S Visa,[2] which could lead to legal permanent residence in the United States. (The Plaintiff's contract-based claims constitute counts I, II and IV of the complaint.) Plaintiff further claims that Defendant took his property without just compensation in violation of the Fifth Amendment (count III). Defendant has moved to dismiss counts I, II and IV for lack of subject matter jurisdiction, on the grounds that these claims request the remedy of

---

[1] Plaintiff names a number of entities and individuals in his complaint as "Defendants" other than the United States. Compl. ¶ 1. As the only proper defendant in this Court is the United States, the Court dismisses the claims against these individuals and entities. *See United States v. Sherwood*, 312 U.S. 584, 588 (1941); *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997).

[2] Pursuant to 8 U.S.C. § 1101(a)(15)(S), the Attorney General has been granted the authority to issue a nonimmigrant S Visa to a person "in possession of critical reliable information concerning a criminal organization or enterprise . . . [who] . . . has supplied such information to Federal or State law enforcement authorities or a Federal or State court; and . . . whose presence in the United States the Attorney General determines is essential to the success of an authorized criminal investigation . . . ."

specific performance. Defendant further moves to dismiss count III for failure to state a claim upon which relief can be granted.

Because the Court finds that Plaintiff's counts I, II and IV seek the remedy of specific performance, a remedy not afforded to this Court, it must grant Defendant's motion with regard to these claims. Further, the Court must dismiss count III because Plaintiff has failed to state a claim upon which relief can be granted. Therefore, for the reasons that follow, Defendant's motions to dismiss are GRANTED.

## I.     Background Facts

In early 2008, Plaintiff alleges that while incarcerated and awaiting deportation to Honduras by Immigration and Customs Enforcement ("ICE"), Plaintiff contacted, by letter, Federal law enforcement agencies including the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA"), offering to act as an informant. Complaint ("Compl.") ¶¶ 1-2, 45. In his letter, Plaintiff specified that he was willing to act as an informant in exchange for receiving the informant S Visa which would enable him to later become a legal permanent resident. Compl. ¶ 2.

In late 2008, Plaintiff became a CHS, Def. Br., Ex. 1, 2013 Decl. of William Roecker ¶ 6 ("Ex. 1"), and continued as a CHS through October 2010. Compl. ¶12. During this time, Plaintiff assisted in the arrest of suspects and the discovery of illegal drugs, Compl. ¶¶ 12, 41, and was paid at various times for his efforts. Ex. 1¶ 8. Plaintiff also agreed to have a tracking device installed on his truck and for his business telephones to be monitored by the Government while acting as a CHS. Compl. ¶¶ 36-38. This relationship, Plaintiff contends, created an implied-in-fact contract between Plaintiff and the FBI. *See generally* Compl.

In 2009 and 2010, Plaintiff was arrested for driving under the influence ("DUI"). Ex. 1 ¶¶ 10, 11. As a result of the second DUI arrest, Plaintiff was designated for deportation. Compl. ¶ 33. However, in order for Plaintiff to remain in the country to testify at the criminal trials for which he had acted as a CHS, the United States Attorney's Office obtained a material witness warrant. *See generally* Compl. pgs. 27-30. Plaintiff remained detained under the material witness warrant from November 10, 2010 to January 27, 2011. Compl. ¶ 39. His detention, Plaintiff alleges, caused him to have his truck repossessed and his family evicted. *Id.*

At some point, the United States Attorney's Office determined that Plaintiff's testimony was no longer needed and for some unknown reason, Plaintiff was released rather than being deported back to Honduras. Ex. 1 ¶¶ 11, 13. To date, Plaintiff resides in Chicago, Illinois. *See* Pl. Br. 15; Compl. ¶ 16.

## II.    Procedural History

On May 29, 2013 Plaintiff filed a four-count complaint in this Court. Plaintiff alleges that the FBI breached an implied-in-fact contract (Count I), breached an implied

2

covenant of good faith and fair dealing (Count II), and that the agency conspired to breach and interfere with an implied-in-fact contract (Count IV). Plaintiff asserts that "his only purpose to enter into a contract with the United States government was to reap the Immigration benefits offered in the Immigration and Naturalization Act, 8 U.S.C. § 1101(a)(15)(S) [to] get the S VISA and become [a] legal permanent resident." Compl. ¶ 55. Plaintiff further claims that Defendant took his property without just compensation in violation of the Fifth Amendment by (1) installing a transmitter on his truck, using his vehicle and monitoring his telephones and (2) by incarcerating him as a material witness which lead him to lose his truck and company (Count III). In response, Defendant filed a motion to dismiss Plaintiff's complaint, or in the alternative, a motion for summary judgment pursuant to Rules 12 (b)(6) and 56 of the Rules of the United States Court of Federal Claims ("RCFC").[3] Plaintiff timely responded in opposition[4] and Defendant replied.

On April 29, 2014, the Court ordered supplemental briefing with regard to whether this Court had jurisdiction over Plaintiff's contract claims. Court Order (Dkt # 16, April 29, 2014). The Court ordered the parties to address the question as to whether this Court had jurisdiction to order the Attorney General to issue an S Visa which would enable Plaintiff to later become a legal permanent resident. Simultaneous briefs were to be filed on or before May 12, 2014. *Id.* Defendant complied and moved to dismiss counts I, II and IV of Plaintiff's complaint pursuant to RCFC 12(b)(1). Plaintiff did not timely respond.

## III. Standard of Review

### A. *Pro Se* Standard

To begin, parties acting *pro se* are generally held to "less stringent standards" than professional lawyers. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) ("[T]he pleadings of pro se litigants should be held to a lesser standard than those drafted by professional lawyers . . . ."). Nevertheless, '[t]he fact that [a plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failure, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

---

[3] Because the Court finds the case ripe for dismissal, the Court need not address Defendant's alternative motion for summary judgment and denies the motion as moot.

[4] In his response in opposition, Plaintiff also requests discovery. In light of this opinion, the Court also denies the request as moot.

3

### B. Motion to Dismiss under RCFC 12(b)(1)

A motion brought pursuant to RCFC 12(b)(1) challenges the Court's subject matter jurisdiction. *See* RCFC 12(b)(1). Subject matter jurisdiction may be challenged at any time by the parties, or as is the case here, by the Court *sua sponte*. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993). Indeed, this Court's jurisdiction to entertain claims and grant relief, like all Federal courts, depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff, who must establish jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). Even so, when faced with a motion to dismiss for lack of subject matter jurisdiction, a court must assume that all undisputed facts alleged in the complaint are true, and it must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

### C. Motion to Dismiss under RCFC 12(b)(6)

RCFC 12(b)(6) allows for the dismissal of a complaint if, assuming the truth of all the allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When analyzing a motion to dismiss under RCFC 12(b)(6), the Court must also accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991), and "the [f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Altantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. Discussion

Defendant raises two arguments as to why the case must be dismissed. First, it argues that this Court lacks jurisdiction to hear Plaintiff's case because counts I, II and IV seeks specific performance rather than money damages. Second, Defendant argues that Plaintiff has not adequately pleaded a takings claim and, therefore, his complaint fails to state a claim upon which relief may be granted.

### A. This Court Lacks Jurisdiction over Counts I, II and IV

Defendant argues that by Plaintiff's own words the alleged implied-in-fact contract never contemplated monetary damages but that instead the actual relief Plaintiff seeks is specific performance. Thus, Defendant advances that counts I, II and IV fall beyond the jurisdiction of this court as provided by the Tucker Act.

Pursuant to the Tucker Act, 28 U.S.C. § 1491, this Court maintains jurisdiction to entertain monetary claims founded upon the Takings Clause of the United States Constitution, money-mandating statutes and regulations or contracts. 28 U.S.C. § 1491(a)(1). A contract which entitles a party to money damages in the event of a breach

is such a money-mandating source. *See Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1343-44 (Fed. Cir. 2008). However, "consent to suit under the Tucker Act does not extend to every contract." *Holmes v. United States*, 657 F.3d 1303, 1309. For instance, a contract claim seeking specific performance is not a remedy that this court is empowered to grant. *Nat'l Center for Mfg. Sciences v. United States*, 114 F.3d 196, 198 (Fed. Cir. 1997). But because there is a presumption that money damages flow from a breach of contract, *see Holmes*, 657 F.3d at 1314; *see also Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001) (in government contracts there is a presumption that a damages remedy will be available upon the breach of an agreement), where a contract "could involve purely nonmonetary relief . . . it [i]s proper for the court to require a demonstration that the agreements could fairly be interpreted as contemplating money damages in the event of breach." *Holmes*, 657 F.3d at 1315. In this instance, "[t]his Court may require a plaintiff to render proof that the contract can fairly be interpreted as mandating compensation by the Federal Government." *Higbie v. United States*, 113 Fed. Cl. 358, 363-64 (2013) (quoting *Holmes*, 657 F.3d at 1315 (additional citations omitted).

In this case, Plaintiff alleges in his complaint that the "only purpose" to enter into the alleged implied-in-fact contract was to receive legal permanent residence through an S Visa and that he "never asked to be monetary[il]y remunerated." *See* Compl. ¶¶ 55-56. It is therefore clear to the Court that by Plaintiff's own words the alleged implied-in-fact contract never contemplated monetary damages, but instead that the relief Plaintiff is seeking is specific performance of the alleged contract with Defendant. Specifically, Plaintiff is requesting the specific performance of his alleged implied-in-fact contract by asking this Court to order the Attorney General of the United States to issue him an S Visa. This Court does not possess jurisdiction to grant such relief. In light of this, the Court must dismiss Counts I, II and IV for lack of subject matter jurisdiction.

### B. There are no Cognizable Takings Claims Upon Which Relief can be Granted

The Takings Clause of the Fifth Amendment states that "private property [shall not be taken for] public use, without just compensation. U.S. CONST. amend. V. A claimant alleging a Fifth Amendment takings claim "must show that the United States, by some specific action, took a private property interest for public use without just compensation." *Short v. United States*, 50 F.3d 994, 1000 (Fed. Cir. 1995). In the present case, Plaintiff alleges two takings claims, neither of which are a cognizable claim. First, Plaintiff alleges that Defendant took his property without just compensation in violation of the Fifth Amendment by incarcerating him as a material witness which then caused him to lose his truck and trucking company. In spite of this, Plaintiff's detention as a material witness does not trigger a takings claim under the Fifth Amendment. *See Hurtado v. United States*, 410 U.S. 578, 588-89 (1973) ("The detention of a material witness, in short, is simply not a 'taking' under the Fifth Amendment. . . .") Second, Plaintiff alleges that by installing a transmitter on his truck, by using his vehicles while a CHS, and by monitoring his telephones, the Defendant also took his property without just

5

compensation. This argument also fails as Plaintiff consented to its use.[5] Compl. ¶¶ 14, 36-37; *F.C.C. v. Florida Power Corp.*, 480 U.S. 245, 252 (1987); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984). Therefore, the Court dismisses Plaintiff's takings claims under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

## V.  Conclusion

For the reasons set forth above the Court GRANTS Defendant's Motion to Dismiss Counts I, II and IV for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and GRANTS Defendant's Motion to Dismiss Plaintiff's takings claims for failure to state a claim pursuant to RCFC 12(b)(6). The Clerk is directed to enter judgment accordingly.

EDWARD J. DAMICH
Senior Judge

---

[5] In his responsive brief, Plaintiff also asserts that he was coerced into consenting to wearing a radio transmitter. Pl. Br. 10. Even if the Court were to credit this allegation, this court lacks jurisdiction for such a claim. *See Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (Tucker Act does not create jurisdiction in the Court of Federal Claims for a party contesting the propriety of a seizure); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993) ("[The] claimant must concede the validity of the government action which is the basis of the takings claim to bring suit under the Tucker Act.).