# In the United States Court of Federal Claims

No. 13-363C
(Filed: April 26, 2016)
FOR PUBLICATION

|  |  |  |
|---|---|---|
| JULIO VILLARS, | ) | |
| | ) | |
| Plaintiff, | ) | Rule 12(b)(1), Subject-Matter |
| | ) | Jurisdiction; Rule 12(b)(6), Failure to |
| v. | ) | State a Claim; Rule 56, Summary |
| | ) | Judgment; Implied-In-Fact Contract; |
| THE UNITED STATES, | ) | Actual Authority; Ratification. |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Grant H. Willis*, Attorney of Record, Jones Day, Washington, DC, for plaintiff.

*Nathanael B. Yale*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. *Christopher R. Donovan*, Of Counsel, Office of the General Counsel Federal Bureau of Investigation.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I.   INTRODUCTION

In this case, plaintiff, Julio Villars, alleges that the United States has breached an implied-in-fact contract to provide him with certain compensation, protection and judicial assistance in connection with his service as a confidential human source for the Federal Bureau of Investigation ("FBI"). The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), or, alternatively, for summary judgment pursuant to RCFC 56. For the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion.

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

Plaintiff, Julio Villars, is a Honduran national who has been living in the United States for the past twenty years.  Pl. Supp. at 1.  In 2008, plaintiff was detained by the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") for deportation to Honduras.  *Id*.; Def. Mot. at 3.  Plaintiff alleges that while he was in ICE custody, he met with FBI Special Agent William Roecker and an unidentified Assistant United States Attorney for the Northern District of Illinois to discuss serving as a confidential human source.[2]  Am. Compl. at ¶ 6.

Plaintiff further alleges that, during this meeting he was offered an arrangement in which he would assist the government by serving as a confidential human source and, in exchange for this service, the United States would provide him with:

1.  Protection from retaliation;

2.  Payment for expenses, relocation and losses incurred in performing his activities as a confidential human source;

3.  A percentage of monies seized by the United States as a result of his work as a confidential human source; and

4.  Judicial assistance and a non-deportation commitment.

Am. Compl. at ¶¶ 2, 7-9, 14-15; Pl. Supp. at 1.

Plaintiff contends that he accepted this arrangement in August 2008, and the government acknowledges that plaintiff was registered as a confidential human source on August 5, 2008.  Am. Compl. at ¶ 12; Def. Mot. at 4; Def. App. at 3.  It is also without dispute

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's amended complaint ("Am. Compl. at __"); defendant's motion to dismiss or, in the alternative, for summary judgment ("Def. Mot. at __"); the appendix to defendant's motion ("Def. App. at __"); plaintiff's response to the government's motion ("Pl. Resp. at __"); defendant's reply in support of its motion ("Def. Rep. at __"); plaintiff's supplemental brief ("Pl. Supp. at __"); and defendant's supplemental brief ("Def. Supp. at __").

[2] The government acknowledges that plaintiff met with Special Agent Roecker as well as another FBI special agent for this purpose, but maintains that an Assistant United States Attorney was not present at this meeting.  Def. App. at 2.

that plaintiff served as a confidential human source from August 2008 until 2010.  Am. Compl. at ¶ 18; Def. Mot. at 4-5; Def. App. at 3.

In 2010, ICE designated plaintiff for imminent deportation.  Am. Compl. at ¶ 28; Def. Mot. at 5.  In October 2010, the United States Attorney's Office for the Northern District of Illinois obtained a material witness warrant to detain plaintiff in the United States so that plaintiff could testify in criminal trials related to his work as a confidential human source.  Am. Compl. at ¶¶ 30-33; Def. Mot. at 5.  Plaintiff alleges that, while detained as a material witness from November 2010 to January 2011, he was subjected to mistreatment, abusive strip searches, solitary confinement and verbal abuse.  Am. Compl. at ¶ 31.  The government subsequently withdrew the material witness warrant and, on January 31, 2011, plaintiff was released from custody.  Def. Mot. at 5; Def. App. at 6, 63.

On July 10, 2012, plaintiff filed a complaint in the United States District Court for the Northern District of Illinois against several federal and state officials and entities challenging the conditions of his detention as a material witness.  Complaint, *Villars v. Holder*, No. 12-4586 (N.D. Ill. filed July 10, 2012).  In that case, plaintiff alleges that his treatment while detained violated the Fourth, Fifth, Sixth, Tenth and Fourteenth Amendments, the Civil Rights Act of 1964, and various other federal statutes.  *Id.*  Plaintiff's district court case was pending at the time that plaintiff filed his complaint in this matter.  *Villars v. Holder*, No. 12-4586 (N.D. Ill. filed July 10, 2012).

The government disputes several of the specific factual allegations set forth in the amended complaint.  First, the government maintains that Special Agent Roecker made no promise to plaintiff regarding either compensation or protection in connection with plaintiff's service as a confidential human source.  Def. App. at 2.  In this regard, the government has submitted a declaration by Special Agent Roecker in which he states that "[a]t no time . . . during my contact with Mr. Villars, did I ever tell Mr. Villars that, in exchange for cooperating with the FBI or acting as a confidential human source ('CHS'), he would be granted citizenship or legal permanent residence, or that he would be guaranteed compensation or monetary award."  *Id.*  Special Agent Roecker also states in the declaration that he "never discussed the

alleged promises [concerning immigration status or compensation] with any of my superiors at the FBI or with individuals at other agencies in the Federal Government." *Id.*

The government also maintains that plaintiff received certain admonishments in connection with his service as a confidential human source. Def. Mot. at 4. In particular, the government contends that, among other things, the FBI informed plaintiff that:

> No Promises or commitments can be made, except by the Department of Homeland Security (DHS), regarding the alien status of any person or the right of any person to enter or remain in the US.

> The FBI cannot guarantee any rewards, payments, or other compensation to the [confidential human source].

*Id.*; Def. App. at 10. While the government acknowledges that the FBI did pay plaintiff for his services, the government maintains that the FBI did not guarantee these payments or promise plaintiff a specific amount of compensation. Def. App. at 3.

Lastly, with regards to whether a government official at the FBI authorized or ratified a contract with plaintiff, the government has filed a declaration by former FBI Supervisory Special Agent Maury V. Taylor−one of two contracting officers at the FBI who had the authority to enter into and administer contracts involving confidential human sources. *Id.* at 12-13. In the declaration, Supervisory Special Agent Taylor states that he does not "recall having reviewed, approved, or certified any contract" with plaintiff. *Id.* at 13. Supervisory Special Agent Taylor further states in the declaration that he has "reviewed all databases that track those individuals within the FBI that have been delegated contracting authority on behalf of the FBI and [has] determined that there is no record during the relevant period" that FBI Special Agent William Roecker was ever appointed as a contracting officer or granted any procurement authority. *Id.* at 14.

### B. Procedural Background

Plaintiff filed his original complaint in this matter alleging breach of contract and takings claims on May 29, 2013. *See generally* Compl. At the time that plaintiff filed the complaint, he was proceeding in this matter *pro se*. *Id.*

On June 4, 2014, the Court dismissed plaintiff's breach of contract claim for lack of subject-matter jurisdiction and dismissed plaintiff's takings claim for failure to state a claim. *See generally Villars v. United States*, No. 13-363C, 2014 WL 2527953, at *1 (Fed. Cl. June 4, 2014). On November 7, 2014, the United States Court of Appeals for the Federal Circuit reversed the Court's decision to dismiss plaintiff's breach of contract claim, because plaintiff's complaint properly requested monetary relief. *Villars v. United States*, 590 F. App'x 962 (Fed. Cir. 2014).

On February 2, 2015, plaintiff filed an amended complaint alleging that the government breached an implied-in-fact contract with him for services as a confidential human source and the implied duty of good faith and fair dealing. *See generally* Am. Compl. On April 6, 2015, the government moved to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). *See generally* Def. Mot. Alternatively, the government moved for summary judgment pursuant to RCFC 56. *Id*. On May 27, 2015, plaintiff filed a response to the government's motion. *See generally* Pl. Resp. On June 26, 2015, the government filed a reply in support of its motion. *See generally* Def. Rep.

On September 10, 2015, the Court referred this matter to the United States Court of Federal Claims Bar Association's Pro Bono/Attorney Referral Pilot Program for assignment of pro bono counsel. *See generally* Sept. 2015 Order. On November 5, 2015, plaintiff filed a motion to substitute counsel. *See generally* Pl. Mot. to Substitute. The Court granted plaintiff's motion on November 9, 2015 and ordered the parties to participate in a telephonic status conference, which was held on December 1, 2015. *See generally* Nov. 2015 Order. Following the telephonic status conference, the Court issued an order setting forth a schedule for additional briefing on the government's dispositive motion. *See generally* Dec. 2015 Order.

On January 14, 2016, plaintiff, through counsel, filed a supplemental response to the government's motion to dismiss. *See generally* Pl. Supp. On February 8, 2016, the government filed a supplemental reply in support of its motion to dismiss. *See generally* Def. Supp. The matter having been fully briefed, the Court addresses the pending motion.

### III.   LEGAL STANDARDS

#### A.   RCFC 12(b)(1) And Jurisdiction

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1).  But, a plaintiff bears the burden of establishing subject-matter jurisdiction, and he must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398 (1976).  And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States,* 317 F. App'x 979, 981 (Fed. Cir. 2008); (citing *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005)).  "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (citing *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

**B.      28 U.S.C. § 1500**

Pursuant to title 28, United States Code, section 1500, the United States Court of Federal Claims does not possess jurisdiction to consider a claim "if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311 (2011). "[T]he purpose of [section] 1500 is to prevent the United States from facing liability involving the same subject matter at the same time in separate fora." *Nextec Applications, Inc. v. United States*, 114 Fed. Cl. 532, 538 (2014). To determine whether section 1500 applies to two suits brought by the same plaintiff, the Court must determine whether:  (1) there is an earlier-filed suit pending in another court, and if so, (2) whether the claims alleged in the earlier-filed suit are "for or in respect to" the same claims now being brought in the United States Court of Federal Claims. *See Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013).  An earlier-filed suit is considered "pending" within the meaning of section 1500 based upon the time the complaint is filed with the United States Court of Federal Claims. *Brandt*, 710 F.3d at 1375.  In addition, two claims are "for or in respect to the same claim" under section 1500 "if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Tohono*, 563 U.S. at 317.  If section 1500 applies, the Court must dismiss the case for lack of jurisdiction. *Id.*

**C.      RCFC 12(b)(6)**

When deciding a motion to dismiss based upon failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6), this Court must also assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *Erickson*, 551 U.S. at 94; RCFC 12(b)(6).  To survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And so, when the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity" and determine whether it is plausible, based upon these facts, to find against defendant. *Id.* at 679.

D.      **RCFC 56**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).  A fact is material if it might affect the outcome of a case.  *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."); *see also Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*, 534 F.3d 972, 977 (Fed. Cir. 2013).  An issue is genuine if a reasonable trier of fact could find for the non-moving party.  *Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."); *see Frolow v. Wilson Sporting Goods*, 710 F.3d 1303, 1310 (Fed. Cir. 2013).

In addition, when resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences '"in the light most favorable to the party opposing the motion."'  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *Agosto v. INS*, 436 U.S. 748, 756 (1978); *see Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  And so, the Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ."  *Matsushita*, 475 U.S. at 587.

E.      **Breach Of Contract Claims Against The United States**

Lastly, the Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law."  *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 *aff'd*,

347 F. App'x 581 (Fed. Cir. 2009).  And so, to bring a valid contract claim against the United States in this Court, the underlying contract must be either express or implied-in-fact.  *Aboo*, 86 Fed. Cl. at 626-27.

To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012).  A government official's authority to bind the United States must be express or implied.  *Roy v. United States*, 38 Fed. Cl. 184, 188-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."  *Id*. at 187.

In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."  *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee'" (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989))).

In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority.  *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).  Ratification may take place at the individual or institutional level.  *SGS-92-X003*, 74 Fed. Cl. at 653-54.  Individual ratification occurs when a supervisor:  (1) possesses the actual authority to contract; (2) fully knew the material facts

surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate. *Id*. at 654; *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005). In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *SGS-92-X003*, 74 Fed. Cl. at 654; *see also Janowsky*, 133 F.3d at 891-92. In order for an otherwise unauthorized contract to be ratified, "officials with ratifying authority must know of the unlawful promise, and such knowledge is a key element of an institutional ratification claim." *Gary v. United States*, 67 Fed. Cl. 202, 216 (2005); *see also United States v. Beebe*, 180 U.S. 343, 354 (1901) ("Where an agent has acted without authority and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken.").

## IV.    DISCUSSION

### A.    The Court Does Not Possess Jurisdiction To Consider Plaintiff's Challenge To His Treatment While In Detention

As an initial matter, the Court must dismiss the portion of this case that pertains to claims arising from plaintiff's detention as a material witness for lack of subject-matter jurisdiction. Title 28, United States Code, section 1500, provides that this Court does not possess jurisdiction to consider a claim "if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *Tohono*, 563 U.S. at 311; *see also* 28 U.S.C. § 1500. To determine whether section 1500 applies to plaintiff's claim here, the Court must determine whether: (1) there is an earlier-filed suit pending in another court, and, if so, (2) whether the claims alleged in the earlier-filed suit are "for or in respect to" the same claims now being brought in the United States Court of Federal Claims. *See Brandt*, 710 F.3d at 1374.

It is without dispute that at the time plaintiff commenced this action, plaintiff had an earlier-filed suit pending in the United States District Court for the Northern District of Illinois. On July 10, 2012, plaintiff filed a complaint in district court that, among other things, alleges that during the period November 2010 to January 2011 he had been mistreated while detained as a material witness. Complaint, *Villars v. Holder*, No. 12-4586 (N.D. Ill. filed July 10, 2012). It is without dispute that plaintiff's district court case was pending when he filed the original

complaint in this matter on May 29, 2013.  *Id*; *see generally* Compl.; *Brandt*, 710 F.3d at 1375 (an earlier-filed suit is considered "pending" within the meaning of [section] 1500 based upon the time the complaint is filed with the Court).  And so, plaintiff has an earlier-filed suit pending when he commenced this action.

Plaintiff's claim relating to his detention as a material witness in this case also arises from the same set of operative facts as the claim that he has brought in district court.  In this regard, plaintiff alleges in both cases that he was mistreated during his detention as a material witness.  *Compare* Second Amended Complaint, *Villars*, No. 12-4586 at ¶¶ 290-91 ("[d]efendants have subjected Mr. Villars a material witness to an unreasonable strip search"); *with* Am. Compl. at ¶ 31 (asserting that when plaintiff was detained as a material witness he was "subjected to mistreatment, abusive strip searches, solitary confinement, and verbal abuses from his jailers").  Given this, the claim alleged in plaintiff's district court case is "for or in respect to" the same claim now being brought here.  *Tohono*, 563 U.S. at 317 (two claims are "for or in respect to the same claim" under section 1500 "if they are based on substantially the same operative facts, regardless of the relief sought in each suit").  And so, plaintiff's claim challenging aspects of his detention as a material witness is jurisdictionally precluded under section 1500 and the Court must dismiss this claim.  RCFC 12(b)(1); 28 U.S.C. § 1500.

### B.    Plaintiff Fails To Establish Actual Authority To Contract

The government has also moved to dismiss plaintiff's implied-in-fact contract claim for failure to state a claim upon which relief may be granted, or, alternatively, for summary judgment on this issue, upon the ground that no government official had actual authority to enter into the alleged contract with plaintiff.  *See generally* Def. Mot.  Plaintiff counters that the Court should deny the government's motion because, he entered into an enforceable contract with a government agent with actual authority to bind the United States in a contract and because, even if unauthorized, the contract was subsequently ratified.  *See generally* Pl. Supp. For the reasons discussed below, plaintiff fails to establish that a government official had actual authority to enter into the alleged contract for confidential human source services.  Plaintiff, however, has demonstrated that there is a genuine dispute as to several material facts related to

his claim that the government ratified an otherwise unauthorized contract.  And so, the Court grants-in-part and denies-in-part the government's motion.

### 1.    The Court Must View The Government's Motion As One For Summary Judgment

As a preliminary matter, the Court must view the government's motion to dismiss pursuant to RCFC 12(b)(6), as a motion for summary judgment.  The government has filed an appendix to its dispositive motion containing the declarations of Special Agent William Roecker and Supervisory Special Agent Maury V. Taylor, as well as several other documents.[3] *See generally* Def. App.  Rule 12(d) of the Rules of the United States Court of Federal Claims provides that "if matters outside the pleadings are presented to and not excluded by the [C]ourt" in connection with a motion under RCFC 12(b)(6), "the motion must be treated as one for summary judgment under RCFC 56."  RCFC 12(d).  And so, this Court has recognized that "[a] decision on a motion for summary judgment, rather than on a motion to dismiss for failure to state a claim, is proper where the parties rely on factual material beyond the allegations in the complaint."  *Zafer Taahhut Insaat Ve Ticaret, A.S. v. United States*, 120 Fed. Cl. 604, 608 (2015) (citing *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011)).  Because the Court has considered matters outside of the pleadings in resolving the government's motion in this case, the Court treats the government's motion as one for summary judgment.  RCFC 12(d); RCFC 56.

### 2.    The Undisputed Material Facts Do Not Show That A Government Official Possessed Actual Authority To Contract With Plaintiff

The undisputed material facts in this matter show that Special Agent Roecker did not have either express or implied actual authority to bind the United States in an implied-in-fact contract.[4]  It is well settled that to establish the existence of an implied-in-fact contract with the

---

[3] In the amended complaint, plaintiff refers in passing to the Declarations of Special Agent William Roecker and Supervisory Special Agent Maury V. Taylor.  Am. Compl. at ¶¶ 10, 18-22, 24, 46.  The Court does not construe these references to mean that plaintiff has incorporated the substance of these documents into the amended complaint.

[4] In this case, the parties do not dispute that plaintiff has demonstrated the first three elements of an implied-in-fact contract with the United States.  Def. Mot. at 9-10; Pl. Supp. at 4.  But, the parties

United States, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz*, 682 F.3d at 1368.  To demonstrate that a government official had actual authority to contract on behalf of the United States, plaintiff must show that the government official had either express or implied actual authority to enter into the contract, or that the alleged contract was ratified at the individual or institutional level.  *Roy*, 38 Fed. Cl. at 187; *see also SGS-92-X003*, 74 Fed. Cl. at 653-54.

The undisputed material facts make clear that plaintiff has not established that Special Agent Roecker had express actual authority to enter into the implied-in-fact contract alleged in this case.  As discussed above, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."  *Jumah*, 90 Fed. Cl. at 612 (internal citations omitted); *see also City of El Centro,* 922 F.2d at 820.  In the amended complaint, plaintiff alleges that Special Agent Roecker entered into a contract with him to provide certain protection, compensation and assistance in exchange for plaintiff's services as a confidential human source.  Am. Compl. at ¶¶ 2, 7-9, 14-15.  But, plaintiff does not point to any authority in the Constitution, a statute, or a regulation that would give Special Agent Roecker the authority to bind the United States in such a contract.  *See generally* Am. Compl; Pl. Supp.  Given this, plaintiff has not established that Special Agent Roecker had express actual authority to enter into the alleged implied-in-fact contract in this case.

Plaintiff similarly fails to establish that Special Agent Roecker had implied actual authority to bind the United States in the alleged contract.  This Court has long recognized that a government official has implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003*, 74 Fed. Cl. at 652 (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627.  Plaintiff does not,

---

disagree about whether plaintiff has shown that a government official with actual authority to bind the United States entered into the alleged contract.  Def. Mot. at 9-11; Pl. Supp. at 4-8.

however, demonstrate—or even allege in this case—that Special Agent Roecker could not have performed his duties without the authority to enter into a contract with a confidential human source. *See generally* Am. Compl.; Pl. Supp.  Plaintiff also fails to demonstrate that the FBI's regulations do not grant such contracting authority to other FBI officials.  Am. Compl. at ¶¶ 6, 8, 10, 15; Pl. Supp. at 6-8.

In addition, plaintiff's reliance upon the United States Court of Appeals for the Federal Circuit's decision *Sommers Oil* as grounds to avoid making such a showing at this stage in the litigation is misplaced.  *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1380-81 (Fed. Cir. 2001); Pl. Supp. at 5-6, 10.  As the Supreme Court held in *Twombly*, plaintiff must do more than simply allege mere legal conclusions in his amended complaint.  *Twombly*, 550 U.S. 544, 564.  Rather, plaintiff must adequately state a claim and he must put forward "allegations plausibly suggesting (not merely consistent with)" a showing of entitlement to relief.  *Id*. at 557.  This Court has also held, within the context of a contract claim involving the United States military, that an averment in a complaint that government agents were "authorized representatives of the United States" alone is not sufficient for the Court to reasonably infer that the government agents possessed authority to bind the United States in a contract.  *Doe v. United States*, 95 Fed. Cl. 546, 583-84 (2010); *see also Roy*, 38 Fed. Cl. at 188; *but see Mendez v. United States*, 121 Fed. Cl. 370, 380-81 (2015) (deferring consideration of the government's motion to dismiss until after discovery).  Because plaintiff has not demonstrated how Special Agent Roecker could have possessed implied actual authority to enter into a contract for confidential human source services, he fails to establish that a government agent had the actual authority to contractually bind the United States here.  And so, the government is entitled to summary judgment in its favor with respect to this issue.[5]

---

[5] Plaintiff's request for an opportunity to conduct discovery on the issue of actual authority to contract is unfounded because plaintiff does not explain how such discovery would aide in establishing that Special Agent Roecker had actual authority to bind the United States in a contract.  S*ee generally* Pl. Supp. Because there are no material facts in dispute regarding whether Special Agent Roecker had actual authority to bind the United States in contract, it is appropriate to grant the government's motion for summary judgment at this stage in the litigation.  *Anderson*, 477 U.S. at 248.

### 3. Plaintiff Is Entitled To Discovery To Develop His Ratification Claim

Summary judgment in the government's favor is not appropriate, however, on the issue of whether the government may have ratified an unauthorized contract with plaintiff. As plaintiff argues in his supplemental brief, there are material facts in dispute with respect to this issue. Pl. Supp. at 12-13; *see also Anderson*, 477 U.S. at 248 ("disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

The United States Court of Appeals for the Federal Circuit has held that, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound in contract if the contract was individually or institutionally ratified. *Janowsky*, 133 F.3d at 891-92. To establish ratification here, plaintiff must show that a supervisor at the FBI had actual authority to contract with plaintiff, fully knew about the material facts surrounding Special Agent Roecker's actions with regards to plaintiff, and knowingly confirmed, adopted, or acquiesced to those unauthorized actions. *Id.*; *Leonardo*, 63 Fed. Cl. at 560. Alternatively, plaintiff must show that the FBI−or more broadly the Department of Justice−sought and received the benefits from an otherwise unauthorized contract with plaintiff to provide services as a confidential human source. *Janowsky*, 133 F.3d at 891-92.

There are material facts in dispute regarding whether a higher ranking individual within the FBI may have ratified an otherwise unauthorized contract with plaintiff. In particular, the government has filed the declaration of former FBI Supervisory Special Agent Maury V. Taylor−one of two contracting officers at the FBI who reviewed and approved contracts with confidential human sources. Def. App. at 12-14. In that declaration, Supervisory Special Agent Taylor acknowledges that he had the authority to ratify a contract with plaintiff, but he does not "recall having reviewed, approved, or certified any contract on behalf of the FBI with plaintiff." *Id*. at 13. But, the fact that Supervisory Special Agent Taylor cannot recall ratifying the alleged contract with plaintiff does not necessarily mean that he did not actually ratify the alleged contract. Nor does Supervisory Special Agent Taylor's declaration resolve factual questions about the identity and potential role of the other FBI contracting officer that the government acknowledges also had the authority to ratify a contract to provide confidential human source services and whether this individual may have ratified the alleged contract at

issue here.  Given this, there is a genuine dispute as to the material facts−and many facts yet to be ascertained−regarding whether another individual within the FBI may have ratified the alleged contract.

Material facts are also in dispute regarding whether the alleged contract may have been institutionally ratified by the FBI.  This Court has held that institutional ratification can occur when the government seeks and receives the benefits from an otherwise unauthorized contract. *SGS-92-X003*, 74 Fed. Cl. at 654.  It is without dispute that plaintiff served as a confidential human source in support of the government's investigation and prosecution of drug trafficking organizations.  Am. Compl. at ¶¶ 18, 22; Def. Mot. at 4; Def. App. at 3.  But, the government provides no information to the Court about whether−and how−the FBI may have benefitted from plaintiff's services.  *See generally* Def. Mot.

Without discovery, plaintiff cannot obtain factual information about how the FBI may have benefitted from his services.  Plaintiff also seeks the opportunity to conduct discovery on "[t]he identities of other Government representatives who were aware of my [confidential human source] contract and whether these representatives possessed authority to bind the Government in contract" and to conduct discovery to determine whether the alleged contract in this case was ratified.  Pl. Supp. at 13-14, Ex. A.  Plaintiff's discovery request is reasonable given the limited factual record currently before the Court.  And so, the Court must deny the government's motion for summary judgment with respect to plaintiff's contract ratification claim and afford plaintiff the opportunity to conduct discovery on this issue.[6]  *Metro. Life Ins. Co. v. Bancorp Servs., LLC*, 527 F.3d 1330, 1338 (Fed. Cir. 2008).

## V.    CONCLUSION

In sum, plaintiff has not established that the Court possesses jurisdiction to consider his claim challenging the conditions of his detention as a material witness, because this claim is

---

[6] In the amended complaint, plaintiff also alleges that the United States has breached the implied duty of good faith and fair dealing with respect to the contract alleged in this case.  Am. Compl. at ¶ 36. Recovery under the theory of breach of the implied duty of good faith and fair dealing requires that plaintiff first demonstrate the existence of a predicate enforceable contract.  *See Peninsula Group Capital Corp. v. United States*, 93 Fed. Cl. 720, 732 (2010).  Because the question of whether plaintiff can establish the existence of an enforceable implied-in-fact contract with the United States here has not yet been resolved, the Court does not reach the issue of whether the government breached the implied duty of good faith and fair dealing.

jurisdictionally precluded under 28 U.S.C. § 1500.  And so, the Court grants the government's motion to dismiss this claim.

Plaintiff similarly fails to establish that a government official had either express or implied actual authority to bind the United States in a contract with plaintiff.  Rather, the undisputed material facts in this case show that Special Agent Roecker did not have actual authority to bind the United States in a contract.  And so, the government is entitled to summary judgment in its favor with respect to this issue.

There is, however, a genuine dispute as to many material facts regarding whether the government may have ratified an unauthorized contract with plaintiff.  Given this, plaintiff should be afforded an opportunity to conduct discovery on this issue.  And so, the Court denies the government's motion for summary judgment with respect to plaintiff's ratification claim.

For the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss with respect to plaintiff's claim regarding his treatment while in detention as a material witness; and

2. **GRANTS-IN-PART AND DENIES-IN-PART** the government's motion for summary judgment with respect to plaintiff's breach of contract claim.

The Court further **ORDERS** the parties to **FILE** a Joint Status Report on or before thirty days after the date of this Memorandum Opinion and Order setting forth a proposed schedule for discovery on plaintiff's ratification claim and, if warranted, a proposed schedule for the briefing of any dispositive motions after the close of discovery.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge